# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4195-19

R.L.H.,

    Plaintiff-Respondent,

v.

D.A.G.,

    Defendant-Appellant.

_____

Submitted May 4, 2021 – Decided May 21, 2021

Before Judges Yannotti and Haas.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FV-04-2651-20.

Louis G. Guzzo, attorney for appellant.

Rutgers Law School, attorneys for respondent (Amy L. Braunstein, of counsel and on the brief; M'Ballou Y. Sanogho, admitted pursuant to Rule 1:21-3, on the brief).

PER CURIAM

Defendant D.A.G. appeals from a June 17, 2020 final restraining order (FRO) entered in favor of plaintiff R.L.H. pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

We derive the following facts from the record. The parties married in December 2019 after dating for approximately eight years. They do not have any children together.

Plaintiff was hospitalized for a period of time prior to May 4, 2020. Because their relationship had soured, plaintiff stated that defendant promised her he would leave their residence before she returned home. He failed to do so.

On May 4, plaintiff was sitting near a door in the house, smoking a cigarette. Defendant, who had recently quit smoking, became angry and slammed the door hitting plaintiff in the back. Plaintiff testified that she had a pre-existing lower back injury and that defendant struck her on purpose.

Plaintiff then checked on the parties' bank account and realized that defendant had taken money out of it. Specifically, she learned defendant had removed $500 that plaintiff was going to use to pay the cell phone bill. When plaintiff learned that she could not pay the bill, she confronted defendant, who responded by yelling at her.

A-4195-19

Plaintiff telephoned her friend, K.Y., and told her what had happened.[1] After defendant went out, K.Y. came over and plaintiff called the police. Plaintiff then obtained a temporary restraining order (TRO) against defendant. While the TRO was in effect, defendant twice followed plaintiff while she was walking in her neighborhood, which also frightened her.

Plaintiff provided a detailed account of defendant's past history of harassing conduct. She stated that on October 25, 2019, she told defendant she did not want to have sex with him. According to plaintiff, defendant "became forceful" and began "tugging on [her] clothes." Defendant threatened plaintiff that she "was going to find out what rape meant." Because she was afraid, plaintiff stated she "just gave in to him out of fear."

On another occasion, defendant threw a plate toward plaintiff and K.Y. after the parties had an argument about cooking steaks. Plaintiff also reported that on a different day, defendant became angry at her, slammed the refrigerator door, and broke a shelf in it.

---

[1] Besides the parties, K.Y. was the only other witness at the trial. She stated that plaintiff frequently reported defendant's harassing conduct to her, and K.Y. also corroborated plaintiff's testimony that she was afraid of defendant. The judge found that K.Y.'s testimony was credible.

3

According to plaintiff, defendant began telling her that her deceased mother, who had suffered from dementia, transferred ownership of a co-op to him. Plaintiff testified that defendant kept firearms in the home and this further contributed to her fear of him.

During his testimony, defendant stated that after the parties married, their relationship deteriorated after the first week. He acknowledged that plaintiff asked him to leave the house, but he claimed that plaintiff's mother had signed a contract giving him an ownership interest in the co-op. Defendant stated he did not "recall any incident that broke" the refrigerator shelf, but admitted the shelf kept falling off. He also denied having any recollection of slamming a door on plaintiff's back "[i]n anger."

Defendant's memory also failed him when he was asked on direct examination about plaintiff's allegation of sexual assault. When asked if this incident occurred, defendant replied, "Not to my knowledge." He also alleged that plaintiff was making things up to "get [him] out of the house and this was her way of doing so."

Defendant stated he did not recall throwing a plate, and testified that he always kept his guns in a closet during the parties' relationship. Defendant

4

claimed that he ran into plaintiff by chance while he was out walking after he moved in with his sister, who also lived in the neighborhood.

In his June 17, 2020 oral decision, the judge determined that plaintiff's testimony was credible, while defendant's claims were not. As for the predicate act initially cited in her request for a TRO, the judge found that defendant took money from the parties' bank account that plaintiff was counting on to pay the cell phone bill, which was "an annoying abusive act on his part." The judge stated, "I can't imagine why he would do that. That is harassment, annoying, intentional act of harassment that has no explanation other than a clear indication of abusive conduct."

In addition, the judge found there was a "litany" of prior acts of domestic violence. The most serious was defendant's threat that if plaintiff did not accede to his demand for sex, plaintiff "was going to find out what rape meant." The judge stated:

> I've listened to the testimony of the parties. I've listened to them, how they testified, the way they testified and quite frankly I believe that act occurred. I believe that the defendant did purposefully threaten the plaintiff with a sexual assault if she did not proceed with the sexual act. That is a cruel and egregious act of domestic violence. And that alone, independent of anything else caused this [c]ourt to grant a [FRO].

In addition, the judge found that defendant pushed the door into plaintiff's back as she alleged, broke the refrigerator shelf in a fit of anger, and threw a plate toward plaintiff and K.Y. The judge further found that defendant intentionally followed plaintiff while she was out walking with K.Y. and that this conduct "violated the spirit of what he was required to do to stay away from the plaintiff" under the TRO.

The judge determined that plaintiff was "afraid of [defendant] because he has acted in a way to control her, to force himself on her." Therefore, the judge granted plaintiff's application for a FRO. This appeal followed.

On appeal, defendant argues that the judge "did not make findings of fact and conclusions of law" in support of his decision, and "did not find that [plaintiff] needed a [FRO] to protect against future acts of domestic violence." We disagree.

Our review of a trial judge's fact-finding function is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). A judge's findings of fact are "binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Investors Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and

expertise in family matters, appellate courts should accord deference to family court factfinding." Id. at 413.

"Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). This is so because the judge has the opportunity to see and hear the witnesses as they testify, thereby developing a "'feel of the case' that can never be realized by a review of the cold record." N.J. Div. of Youth & Family Servs. v. G.M., 198 N.J. 382, 396 (2009) (quoting D.Y.F.S. v. E.P., 196 N.J. 88, 104 (2008)). A judge's purely legal decisions, however, are subject to our plenary review. Crespo v. Crespo, 395 N.J. Super. 190, 194 (App. Div. 2007) (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a), which incorporates harassment, N.J.S.A. 2C:33-4 and sexual assault, N.J.S.A. 2C:14-2, as conduct constituting domestic violence. Id. at 125-26. The judge must construe any such acts in light of the parties' history

to better "understand the totality of the circumstances of the relationship and to fully evaluate the reasonableness of the victim's continued fear of the perpetrator." Kanaszka v. Kunen, 313 N.J. Super. 600, 607 (App. Div. 1998); N.J.S.A. 2C:25-29(a)(1).

If a predicate offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the facts set forth in N.J.S.A. 2C:25-29(a)(1) to -29(a)(6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 126-27). Whether a restraining order should be issued depends on the seriousness of the predicate offense, on "the previous history of domestic violence between the plaintiff and defendant including previous threats, harassment[,] and physical abuse," and on "whether immediate danger to the person or property is present." Corrente v. Corrente, 281 N.J. Super. 243, 248 (App. Div. 1995) (citing N.J.S.A. 2C:25-29(a)).

Applying these standards, we discern no basis for disturbing the trial judge's decision to grant a FRO to plaintiff. The judge specifically found that plaintiff's account of the incidents of domestic violence was credible and there is substantial credible evidence in the record to support that finding. Therefore,

we affirm substantially for the reasons set forth in the judge's oral opinion. We add the following comments.

The predicate act cited in plaintiff's request for the TRO was harassment. N.J.S.A. 2C:33-4 defines harassment, as follows:

> [A] person commits a petty disorderly persons offense if, with purpose to harass another, he:
>
> a.  Makes, or causes to be made, a communication or communications anonymously, or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm; [or]
>
> b.  Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c.  Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

Proof of a purpose to harass is an essential element of N.J.S.A. 2C:33-4. See L.D. v. W.D., 327 N.J. Super. 1, 5 (App. Div. 1999). "A person acts purposely with respect to the nature of his conduct or a result thereof if it is his conscious object to engage in conduct of that nature or to cause such a result." State v. Hoffman, 149 N.J. 564, 577 (1997) (quoting N.J.S.A. 2C:2-2(b)(1)). There must be proof that a defendant's conscious object was to "harass," that is, "annoy," "torment," "wear out," or "exhaust." State v. Castagna, 387 N.J. Super.

9

598, 607 (App. Div. 2006) (quoting <u>Webster's II New College Dictionary</u> 504 (1995)).

"A finding of a purpose to harass may be inferred from the evidence presented," and "[c]ommon sense and experience may inform that determination." <u>Hoffman</u>, 149 N.J. at 577. Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." <u>Castagna</u>, 387 N.J. Super. at 606.

Here, we agree with the judge's determination that defendant's act of taking money from the parties' joint bank account was done with the express purpose of preventing plaintiff from paying the phone bill as she had planned. As the judge found, this was "an annoying abusive act on [defendant's] part." And, it was only one in a "litany" of such acts, which clearly constituted a course of alarming conduct defendant perpetrated against plaintiff.

As the judge found, defendant closed a door into plaintiff's back earlier that same day even though he knew she had a pre-existing injury in that area. He did so simply because he did not want plaintiff to smoke after he was able to quit that habit. Defendant threw a plate in the direction of plaintiff and her

10

friend because he was angry about how steaks were cooked. Defendant also broke the refrigerator shelf during another fit of anger. Most egregiously, defendant threatened plaintiff that she "was going to find out what rape meant" if she did not give in to his sexual demands.[2] Therefore, the judge correctly concluded that defendant committed acts of domestic violence in violation of the PDVA.

With regard to the second prong of <u>Silver</u>, the judge properly found that a FRO was necessary to protect plaintiff from further acts of domestic violence, especially in view of defendant's past history of harassing her and his failure to abide by the spirit of the TRO by following plaintiff during her walks in the neighborhood. <u>Silver</u>, 387 N.J. Super. at 128. We perceive no basis to depart from the judge's findings, which sufficiently explain why a FRO was needed under the circumstances presented here.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

---

[2] In addition to harassment, defendant's use of coercion to enable him to commit an act of sexual penetration with plaintiff also constituted sexual assault under N.J.S.A. 2C:14-2(c)(1).